UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PAULA'S STORE SPORTWEAR LLC d/b/a "PAULA'S" and/or "PAULA'S STORE SPORTWEAR, LLC", and PAUL SANCHEZ, <br><br> Defendants. | **Civil Action No. 13-3263 (SRC)** <br><br> **OPINION** |

**CHESLER**, District Judge

This matter comes before the Court upon the motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b) filed by Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach"). Defaulting Defendants Paula's Store Sportwear, LLC and Paula Sanchez (collectively, "Defendants") have failed to oppose the motion. For the reasons expressed below, the Court will grant Coach's motion for entry of default judgment.

**I.   Background**

This is a trademark counterfeiting and infringement action. The Complaint and the record before the Court, which includes the declaration of a private investigator retained by Coach to investigate the suspected sale of counterfeit items and the declaration of Coach's intellectual property coordinator, provide the following pertinent facts:

1

Coach is a publicly-traded corporation engaged, since its founding 70 years ago, in the business of designing, marketing and selling fine leather and mixed material products. These products include handbags, wallets, accessories, eyewear, footwear, jewelry and watches. In connection with this business, Coach owns a number of trademarks, trade dresses, design elements and copyrights (collectively the "Coach Marks") registered with the United States Patent and Trademark Office. Coach's products, which bear the Coach Marks, are sold throughout the United States and elsewhere in Coach's own specialty retail stores, department stores, catalogs and the internet.

This case arises from the discovery of counterfeit Coach wallets and handbags displayed and offered for sale in a store owned and operated by Defendants and located at 160 Lexington Avenue in Passaic, New Jersey. On April 2, 2013, the Passaic County Sheriff's Office executed a search warrant at the store. The private investigator whose firm, MSA Investigations, had been retained by Coach to investigate the suspected sale of counterfeit Coach goods at Defendants' store was present for the search. The search resulted in the seizure of four counterfeit Coach wallets and two counterfeit Coach handbags as well as the arrest of Paula Sanchez. Coach's investigator photographed the seized counterfeit Coach items.

Coach's intellectual property coordinator, Samanta Bangaree, examined digital images of the seized goods. According to Bangaree, the quality and craftsmanship of the counterfeit goods did not meet the standards of authentic Coach merchandise. She asserts, for example, that the hardware used in the handbags and wallets (such as zippers and buckles) was not of the type used in Coach merchandise and that the counterfeit goods' linings and stitching were inconsistent with authentic Coach goods. Bangaree further declares that the counterfeit goods at

2

issue involved the following federally protected Coach Marks: Storypatch (Registration No. 3,338,048); Op Art (Registration No. 4,105,636; Horse & Carriage (Registration No. 3,441,671; Coach Stylized (Registration No. 3,413,536); Coach Work Mark (Registration No. 1,071,000); Coach Lozenge (Registration No. 1,070,999; Hangtag (Registration No. 2,088,707; and Coach Word Mark Paper Tag (Registration No. 3,157,972).

Coach filed the instant action on May 23, 2013. The docket shows that Defendants were served with the Summons and a copy of the Complaint on June 5, 2013. They failed to answer or otherwise respond to the Complaint. Upon Coach's request, The Clerk of the Court entered default against them pursuant to Federal Rule of Civil Procedure 55(a) on August 21, 2013.

The Complaint alleges that the four counterfeit wallets and two counterfeit handbags discovered at Defendants' store during the April 2, 2013 search were not authentic Coach products. It contains nine counts asserting claims under the Lanham Act, 15 U.S.C. § 1221 et seq., as well as New Jersey statutory and common law, which will be discussed in more detail below. Coach seeks statutory damages as well as injunctive relief. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338 and 28 U.S.C. § 1367(a).

## II. Discussion

### A. Legal Standard

Fed.R.Civ.P. 55(b)(2) authorizes the entry of a default judgment against a party that has defaulted. A consequence of the entry of a default judgment is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). Even so, before entering default

judgment, the Court must first determine whether the unchallenged facts constitute a legitimate cause of action. Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536 (D.N.J. 2008). Moreover, a party seeking default judgment pursuant to Rule 55(b)(2) must prove damages. Comdyne, 908 F.2d at 1149. It is well-established in the Third Circuit that "the entry of a default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

The Court will accordingly proceed to determine whether the unchallenged facts, as set forth in the Complaint's allegations and in the declarations filed in support of this motion, suffice to establish the causes of action pled by Coach. It will then proceed to address Coach's request for an award of damages, attorneys' fees and costs and injunctive relief.

### B. Causes of Action

The Complaint asserts five federal claims: trademark counterfeiting, 15 U.S.C. § 1114; trademark infringement, 15 U.S.C. § 1114; trade dress infringement, 15 U.S.C. § 1125(a); false designation of origin and false advertising, 15 U.S.C § 1125(a); and trademark dilution, 15 U.S.C. § 1125(c). The facts in the record show that Coach owns various registered marks which were used by Defendants in connection with the sale of counterfeit items in a way that caused a likelihood of confusion between the counterfeit wallets and handbags and the authentic Coach products. The elements of Coach's claims for trademark infringement and false designation are therefore established. See A& H Swimwear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000) (setting forth the identical elements of these two claims). The established trademark infringement, in turn, supports the first element of Coach's counterfeiting claim. Chanel v. Gordashevsky, 558 F. Supp. 2d at 537. In addition, a counterfeiting claim requires a

plaintiff to "show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." Id. at 536-37. Coach has alleged that "products bearing the Coach Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Coach, and have acquired strong secondary meaning." (Compl. ¶ 13.) Taken as true, this demonstrates at the very least a deliberate disregard of Coach's rights in the marks and an effort to profit from Coach's reputation for high-end products, meeting the Third Circuit's standard of willfulness. Securacomm Consulting Inc. v. Securacom Inc., 166 F.3d 182, 187 (3d Cir. 1999) superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky, 399 F.3d 182, 187 (3d Cir.1999). Thus, the facts also support the trademark counterfeiting claim. Trade dress infringement has also been established. Coach sets forth that the Coach trade dresses are non-functional and distinctive and that a consumer is likely to confuse the source of authentic Coach products with that of the products sold by Defendants. See McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007). Finally, the trademark dilution claim has also been adequately established based on the unchallenged facts presented by Coach. Such a claim entails the following elements:

> (1) the plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of eight factors listed in § 1125(c)(1); (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) defendant's use began after the plaintiff's mark became famous; and (4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157, 163 (3d Cir. 2000). Coach is and has been for many years the owner of many well-recognized marks, including the

5

Coach Marks infringed by Defendants in this case. Defendants' commercial use of the marks in their sale of counterfeit goods lessens the capacity of the Coach Marks to identify authentic Coach products.

For the same reasons, the state claims asserted are supported by the facts alleged by Coach. Coach seeks relief for trademark counterfeiting, in violation of N.J.S.A. 56:3-13.16, unfair competition, in violation of N.J.S.A. 56:4-1, and common law trademark infringement. The facts that establish liability under the federal Lanham Act claims also suffice to establish these state law claims. See, generally, Coach, Inc. v. Fashion Paradise, LLC, No. 10-4888, 2012 WL 194092, at *5 (D.N.J. Jan. 20, 2012) (reviewing sufficiency of identical claims for trademark infringement under New Jersey state law and summarizing legal authority concerning similarity of these causes of action to Lanham Act claims). Finally, Coach also asserts a claim for unjust enrichment under New Jersey common law. This claim is substantiated, as the facts alleged demonstrate that Defendants were selling counterfeit items and thus unjustly obtaining a benefit based on Coach's reputation.

Coach has demonstrated that it is entitled to default judgment. Based on the record before the Court, the Court discerns no meritorious defenses available to Defendants. Coach has been prejudiced by Defendants' failure to appear, as it has been denied the opportunity to obtain discovery and prosecute this action. Defendants bear culpability for their default. The docket shows that they were properly served with the Summons and Complaint over six months ago. They were also served with a copy of this motion. Yet, they have failed to enter an appearance or make any contact with the Court about this action. Entry of default judgment is warranted. See

6

Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (setting forth findings that Court must make before entering default judgment).

### C. Damages

The Court now turns to the matter of an appropriate damages award. The Lanham Act provides that a plaintiff can elect to recover either actual damages based on the defendant's profits or statutory damages. 15 U.S.C. § 1117(a) & (c). In this case, Coach elects statutory damages, as Defendants' failure to appear and litigate deprives Coach of the opportunity to collect discovery and present evidence as to lost profits and actual damage to Coach's goodwill. For statutory damages under the Lanham Act, the plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)). If the use of the counterfeit mark was willful, as Coach has alleged in this case, the maximum increases to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2). Here, the facts set forth by Coach demonstrate that Defendants infringed eight marks involving two types of goods, wallets and handbags. Coach requests that the Court award $100,000 for each of Coach marks infringed, for a total of $800,000 in damages.

The Court has wide discretion in determining an appropriate statutory damage award. To assess whether the request is appropriate, the Court may be guided by past statutory damage awards. Coach v. Fashion Paradise, LLC, 2012 WL 194092, at *7. The Court finds the approach taken by District of New Jersey Chief Judge Jerome Simandle in the trademark infringement action entitled Coach v. Fashion Paradise to be well-suited to this action. In that case, Judge Simandle addressed a similar factual scenario involving the sale of a limited quantity of

7

counterfeit goods at a small shop. In particular, the evidence in Fashion Paradise indicated, in Judge Simandle's assessment, a relatively small-scale operation including "50 handbags, 15 wallets, 10 scarves, 5 belts and 3 pairs of shoes, all bearing Coach trademarks and designs." Id. Just as in the case at bar, in Fashion Paradise, all the counterfeit items "were observed by a private investigator on a single day in Defendants' Fashion Paradise store on August 30, 2010." Id. The plaintiff owner of the marks, Coach, sought an award against the Fashion Paradise defendants of $100,000 per mark infringed, per type of good. Id. at *8. Based on the infringement involving five types of goods and three marks, the Judge Simandle calculated the range of authorized damages under the Lanham Act and concluded that an award of $30,000 per infringement was appropriate. Id. The court reasoned that the total award of $450,000 was within the range established by Congress and "significant enough to serve as compensation to the Plaintiffs and a deterrent to both the Defendant and others." Id. The court further reasoned that the award took into account the fact that the defendant in Fashion Paradise sold the counterfeit goods at a small shop, as opposed to large-scale distribution on the internet, and that the individual defendant shop owner had repeatedly engaged in the infringement of Coach's marks, apparently undeterred by a previous default judgment award against him. Id.

In this case, the statutory damages may range from a minimum of $16,000 to a maximum of $32,000,000, assuming the infringement was willful. The Court concludes that an award of $5,000 per infringement, per type of good, for a total award of $80,000 is appropriate. Coach's application for an award of ten times this amount strikes the Court as excessive in light of the very limited scope of conduct in violation of the Lanham Act. This infringement action is based on Defendants' selling or offering for sale of a total of six items – four wallets and two handbags

8

– at the Paula's Sportwear Store in Passaic. They were all discovered on the same day, during the April 2, 2013 search of the store. There is no evidence that Defendants engaged in any internet sales or distributions of any counterfeit Coach products, nor any other widespread selling or offering for sale of such counterfeit goods, and thus the offense appears to be limited to the sale of items in Defendants' stand-alone, in-town shop. The record contains no indication that Defendant Sanchez, the store owner, has repeatedly infringed the Coach Marks and/or that she has been undeterred by any previous judgments against her for Lanham Act violations, which were factors Judge Simandle took into consideration in applying a multiplier to the per-infringement damages he found appropriate in the Fashion Paradise case. The Court also notes that, according to the Coach intellectual property coordinator's declaration, the average manufacturer's suggested retail price for an authentic Coach handbag is $298 and $198 for an authentic Coach wallet. Using these figures, the lost retail value based on the six counterfeit items found in Defendants' store amounts to less than $1,500. An award of $80,000 in statutory damages for Defendants' Lanham Act violations falls within the statutory range and represents an amount significant enough to serve as compensation to Coach and as a deterrent to both the Defendants and others.

### D. Costs and Attorneys' Fees

Coach asks that the total award include attorneys' fees and costs. The Lanham Act entitles a plaintiff who prevails in an action for trademark infringement, brought under 15 U.S.C. § 1125(a) or (d), or for willful infringement, pursuant to 15 U.S.C. § 1125(c), to recover the costs of the action. 15 U.S.C. § 1117(a). The Lanham Act also provides that the Court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." Id. "Exceptional" has

been interpreted by the Court to mean an action involving culpable conduct. Securacomm, 224 F.3d at 280. The Court has found that Defendants' conduct in willfully infringing the Coach marks to profit from the goodwill established by Coach and in failing to defend against the allegations in the Complaint involves culpable conduct. The Court will thus award both costs and reasonable attorneys' fees to Coach.

The documentation submitted to the Court in support of Coach's application for costs and fees supports an award of $401.20 in costs and $3,178.95 in fees, the latter of which includes an award of $292.45 for investigative charges incurred by Coach in connection with this lawsuit. See Chanel v. Gordashevsky, 558 F. Supp. 2d at 539 (holding that investigative charges are recoverable under the Lanham Act as part of an award of attorneys' fees).

### E. Injunctive Relief

Coach also asks the Court to order a permanent injunction to enjoin Defendants from infringing the Coach Marks. The Lanham Act authorizes the Court to grant an injunction to prevent violations of the Act's prohibitions on trademark infringement, as set forth in 15 U.S.C. § 1125(a), (c), or (d). See 15 U.S.C. § 1116(a). To enter a permanent injunction, the Court must find that Coach has demonstrated:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc.v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

The Court finds that the record presented by Coach establishes this four-factor test for injunctive relief. The Third Circuit has held that once a plaintiff has established that the

defendant's trademark infringement creates a likelihood of confusion, as Coach has done in this case, "the inescapable conclusion is that there was also irreparable injury." Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 197 (3d Cir. 1990). A remedy at law will not be adequate to compensate Coach for the injury to its reputation, nor will it necessarily prevent future trademark infringement. Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009 WL 3633882, at *5 (D.N.J. Oct. 28, 2009). A balancing of hardships between the parties weighs strongly in favor of entering the injunction. The injunction sought requires that Defendants abide by the law and refrain from infringing the Coach Marks, whereas without an injunction, Coach bears hardship in the form of lost sales and harm to its reputation. Finally, issuing an injunction that will enforce Coach's rights in the Coach Marks furthers the public's interest in both the protection of trademark and in the avoidance of consumer confusion. Bill Blass, Ltd. v. SAZ Corp., 751 F.2d 152, 156 (3d Cir. 1984).

### III. Conclusion

For the foregoing reasons, Coach's motion for default judgment against Defendants will be granted. An Order awarding damages, costs and fees, as discussed above, as well as entering a permanent injunction against Defendants, will be filed.

                                                s/ Stanley R. Chesler
                                              STANLEY R. CHESLER
                                        United States District Judge

Dated: January 31, 2014.